# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

STACY EUGENE MILLER      )
    ID# 910804          )
         Petitioner,     )
vs.                     )        No. 3:06-CV-1221-K (BH)
                     )
RICK THALER, Director,     )       Referred to U.S. Magistrate Judge
Texas Department of Criminal   )
Justice, Correctional Institutions Division,  )
        Respondent.     )

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation.

## I. BACKGROUND

On July 10, 2006, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for theft over $200,000 in cause F99-71656-VS. Respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual History

On July 21, 1999, the State indicted petitioner for theft on or about June 6, 1999, of an amount greater than $200,000. (Trial Transcript:2-3). He pleaded not guilty and was tried before a jury on February 14-16, 2000.

At trial, testimony was presented that in June of 1999, the company where petitioner worked as a weekend supervisor, Armed Transport, was robbed of approximately $ 1.2 million in checks and cash. (R. 3:14-17, 67). When employees reported to work on the morning of Sunday, June 6, 1999, and found that petitioner was not there to open the business, they called petitioner's supervisor, who subsequently found petitioner in one of the vaults. (R. 3:19-24). Petitioner's supervisor had received a call at approximately 3:30 a.m. that morning from the alarm company and

was told that an alarm had sounded at the business and that the police had been dispatched. (R. 3:18). In his statement to the police two days later, petitioner stated that the night before the robbery, a homeless man with a gun had accosted him while he was sitting in his car on a nearby road, had found cards in his wallet showing where he worked, and had forced him to drive to work and open the building and vault. Petitioner also stated that he had been hit on the head by the assailant and left in the vault, from where he activated an alarm. The statement to the police was admitted into evidence at trial. (R. 3: 206-211). When petitioner was arrested about one month later, he had almost $3800 in cash. (R. 3:211-12).

Petitioner's regional supervisor, an investigator with Armored Transport, and the Dallas police detective who investigated the case all testified that they did not find petitioner's story credible. The detective found petitioner's story of being held up by a homeless man with a gun suspicious, especially because the security tapes from the building showed that the "homeless man" who took the money was wearing dishwashing gloves. The company cards in petitioner's wallet had some codes written on them but did not have the company's name; they would not have meant anything to anyone looking through petitioner's wallet. Petitioner also told the police that he had his gun in the car, and that after the homeless man initially approached his car, he tried to chamber a bullet in the gun while the man walked around his car and entered on the passenger side, but the gun jammed. Petitioner neither pointed the jammed gun at the assailant nor drove away while the man was walking around his car. The paramedics who were called to the scene could locate no injuries on petitioner's face where he said he had been hit. (R. 3:217-19).

The investigator with the company was also skeptical of petitioner's story because petitioner stated, and the security tape reflected, that the assailant initially tried to enter the alarm code on the building himself, but the alarm went off, and the two of them left. Petitioner did not, however, tell

the assailant that he could not enter the code again once the alarm was set. Instead, the two men returned later, and petitioner entered the code himself. He also did not enter the distress alarm code when he entered the code for the building, which would have sent a silent alarm, although he had recently been provided this code by his direct supervisor. Petitioner was found in the vault used on the weekends, and he had failed to set the time lock on this vault the previous night although this was his job as the weekend supervisor, and it was something that he was required to do on all weekend nights. Had he done so, that vault could not have been opened until the next morning. Had it been a mere oversight not to set the time lock on this vault, petitioner could have taken the assailant to one of the other vaults that could not have been opened because of the time locks, but he did not do so. The investigator also found it suspicious that petitioner never hit any of the "hold up alarms" located in numerous inconspicuous places in the building on the way to the vault where he was found. According to the security tape, he did not hit the hold up alarm inside of the vault until the assailant had been gone for over ten minutes, he stood near the door of the vault while the assailant retrieved a cart full of bags from the back of the vault but he did not escape, and he did not leave the vault for six hours although there was a manual mechanism he could have used for this purpose because the vault was not locked. (R. 3:149-62).

Phillip Jones (Jones) testified that he had known petitioner since high school, that they had reconnected in the months leading up to the offense, and that the two of them had decided to steal from Armored Transport because they could get a little "easy" money. (R. 3:105-110). On Saturday, June 5, 1999, Jones met up with petitioner near his work at around 9:00 or 10:00 p.m., and they drove to the building where petitioner worked. Jones brought a .25 automatic pistol he already owned because petitioner wanted to make it "look real," and petitioner knew that Jones had the gun with him. Jones also hit petitioner once while they were in the car. Once they arrived, Jones tried

to enter the code to turn off the alarm to the building, but the alarm went off and they left. They later returned, and while he pointed the gun at petitioner, petitioner entered the alarm code. (R. 3:111-116, 142). Jones then followed him into the vault inside the building where the money was stored, petitioner opened it, he told petitioner to get down on the ground, hit him again and left, taking two bags of money and checks with him. Jones burned the checks and stored the money at Larry Davis' (Davis) house. (R. 3:117-20, 127-28). Jones provided a statement to the police that was entered into evidence at trial. (R. 3:144).

The jury found petitioner guilty and sentenced him to thirty years. (*Id*. at 5, 103).

## B. **Procedural History**

On direct appeal, petitioner challenged the legal sufficiency of the evidence to sustain his conviction, contending that the testimony of an accomplice was not sufficiently corroborated. Petitioner's conviction was affirmed on direct appeal in an unpublished opinion. *Miller v. State*, No. 05-00-00490-CR (Tex. App.–Dallas Feb. 7, 2001). On November 19, 2003, the Texas Court of Criminal Appeals granted petitioner's first state writ application and gave him permission to file an out-of-time petition for discretionary review. *Ex parte Miller*, WR-57,275-01 (Tex. Crim. App. Nov. 19, 2003). This PDR was refused on June 30, 2004. *See* PDR-2100-03.

Petitioner filed a second state habeas application challenging his conviction on June 30, 2005, raising the same grounds for relief as in his federal petition and additional grounds. (State Habeas Transcript[WR-57,275-02]:2-32). On April 12, 2006, the Court of Criminal Appeals denied relief without written order on the trial court findings without a hearing. (S.H.Tr.:cover).

On July 6, 2006, petitioner mailed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9). On August 13, 2007, this Court denied petitioner's federal petition as barred by the statute of limitations pursuant to *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004), and

petitioner appealed. (*See* docs. 7, 12, 13). Although it noted that this Court did not at the time of judgment have the benefit of the Supreme Court's subsequent opinion in *Jimenez v. Quarterman*, 129 S.Ct. 681, 686 (2009), the Fifth Circuit Court of Appeals concluded that the finding that petitioner's federal petition was untimely based on *Salinas* was erroneous, vacated the judgment and remanded the case. *Miller v. Thaler*, No. 07-10962 (5th Cir. June 22, 2010).

On July 27, 2010, this Court ordered respondent to file a response. On October 5, 2010, respondent filed a response, acknowledging that petitioner's claims are not time-barred or unexhausted, and addressing the merits. Petitioner filed a reply brief on December 3, 2010.

**C. Substantive Issues**

Petitioner claims that:

1) the evidence is insufficient to support the guilty verdict, his guilt as a party to the crime, or the deadly weapon finding (grounds one, three, four);

2) the state law requiring corroboration of accomplice witness testimony is unconstitutional because it lowers the prosecution's burden of proof (ground two);

3) the trial court erred by admitting hearsay (ground five), admitting prejudicial photographs into evidence at the punishment phase of the trial (ground six), denying defense counsel's request for a lesser included offense jury instruction (ground seven), sustaining some of the prosecution's objections (ground eight), and defining reasonable doubt in the jury instructions (ground nine);

4) he was denied his constitutional right to confront and cross-examine a witness (ground eleven);

5) the prosecution withheld favorable evidence (ground twelve);

6) his trial counsel provided ineffective assistance of counsel (ground thirteen); and

7) he is actually innocent of the offense (ground ten).

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III. SUFFICIENCY OF THE EVIDENCE

Petitioner contends the evidence is insufficient to support his conviction for theft (ground one) or as a party to the offense (ground three) and the deadly weapon finding (ground four).

### A.  <u>Legal Standard</u>

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense."  *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992).  Federal courts have extremely limited habeas

7

review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. When "faced with a record of historical facts that supports conflicting inferences [courts] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260. When considering a claim of insufficient evidence to support the

underlying conviction on federal habeas review, this Court should only determine "whether the evidence was constitutionally sufficient to convict [petitioner] of the crime charged." *Id.* at 262 (quoting *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991)).

**B.    Conviction for Theft and as a Party to the Offense**

Under Texas law, a person commits theft if he appropriates property, without the owner's consent, with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03 (a), (b) (Vernon 1997).  The statute requires that testimony of an accomplice be corroborated by proof that tends to connect the defendant to the crime, but it permits knowledge or intent to be established by the uncorroborated testimony of the accomplice. § 31.03(c)(2).  Petitioner's jury was instructed on this law. (Tr.:81-2).  It was also instructed on the law of parties, i.e., that if it found beyond a reasonable doubt that while acting with Jones with intent to promote or assist in the commission of theft, solicited, petitioner encouraged, directed, aided, or attempted to aid Jones in committing theft, then petitioner was guilty of theft. (Tr.:83).

On direct appeal, the court of appeals held that the evidence was legally sufficient to support the guilty verdict because aside from Jones' testimony, there was evidence tending to connect petitioner with the theft, including his failure to use a duress code, his failure to activate any of the numerous available "hold-up" alarms, his failure to use the release lever to escape the vault, the absence of any sign of physical injury despite his statement that he had been pistol-whipped, and the security tape showing that he seemed to be acting in concert with the accomplice. *Miller v. State*, slip op. at 2.  This decision is not an unreasonable application of or contrary to federal law.

Viewed in the light most favorable to the verdict, as required under the *Jackson* standard, the evidence presented at trial is sufficient to support petitioner's guilt as a party to a theft of over $200,000.  First, Jones testified that he and petitioner planned and executed the theft.  Second, the

prosecution presented testimony about petitioner's explanation of the events and his lack of credibility. Petitioner's arguments regarding the sufficiency of the evidence attack the credibility of Jones' testimony and the weight to be given to the testimony of other State witnesses, (Pet. at 10-14), but this Court may not second-guess either the weight or credibility of the evidence. A federal habeas court should not substitute its view of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Based on Jones' testimony about petitioner's involvement, along with testimony from other witnesses about the lack of credibility of petitioner's explanation of the crime, any rational juror could have found him guilty beyond a reasonable doubt of acting with Jones, with intent to assist Jones in the commission of the theft of over $200,00, by encouraging and aiding him in the theft. Petitioner is therefore not entitled to relief on these claims.

## B. <u>Deadly Weapon Finding</u>

Petitioner complains that the deadly weapon finding is supported solely by the accomplice testimony of Jones. (Pet. at 16). Under Texas law, a deadly weapon finding is appropriate where a defendant is a party to an offense and knew that a deadly weapon would be used or exhibited. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (Vernon 2000). Under state law, a deadly weapon finding can be based on the testimony of an accomplice witness without any corroboration. *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001). Furthermore, the Constitution does not require the corroboration of accomplice testimony to support a conviction. *See Thompson v. Lynaugh*, 821 F.2d 1054, 1062 (5th Cir. 1987). Jones testified that he brought his gun at petitioner's request. The evidence is therefore sufficient to support a finding that petitioner knew that a deadly weapon would be used or exhibited. This ground for relief should be denied.

## IV. ACCOMPLICE TESTIMONY

In his second ground for relief, petitioner contends that he was denied due process when the

"standard for accomplice witness testimony was applied to his case" because it lessened the burden of proof from beyond a reasonable doubt. (Pet. at 7, 15).

The accomplice witness testimony jury instruction that the jury received at petitioner's trial is required under state statute. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1965). Under this law, the jury was instructed that petitioner could not be convicted on the testimony of an accomplice unless it was corroborated by other evidence tending to connect him to the offense, not merely evidence showing that an offense was committed. (Tr.:81-82). This state law does not lower the burden of proof in criminal cases to a standard below reasonable doubt. In fact, the jury in petitioner's case was specifically instructed that it could not convict petitioner of theft unless the jurors believed from the evidence beyond a reasonable doubt that he was guilty. (Tr.:82-83). This additional state law requirement, which the federal constitution does not require, *see Thompson v. Lynaugh*, 821 F.2d 1054, 1062 (5th Cir. 1987), *increased* the burden on the prosecution to prove petitioner's guilt.

The state habeas court held that the state statute regarding accomplice testimony is not unconstitutional as applied to petitioner, and this claim was denied on its merits. (S.H.Tr.:cover, 163). This decision is not contrary to federal law. This ground for relief should therefore be denied.

## V. TRIAL COURT ERROR

In his fifth, sixth, seventh, eighth, and ninth grounds for relief, petitioner asserts that the trial court erred by admitting hearsay, admitting prejudicial photographs, denying defense counsel's request for a lesser-included offense jury instruction, sustaining certain objections by the prosecution, and defining reasonable doubt in the jury instructions. Respondent contends that these grounds are procedurally barred because they were denied at the state habeas level based on a state procedural rule.

## A. **Procedural Bar**

The Supreme Court has held that when a claim was dismissed by a state court pursuant to an independent and adequate state procedural rule, federal habeas review of that claim is barred unless the prisoner can establish either cause for the default as well as actual prejudice as a result of the alleged violation of federal law *or* that failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds which bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001), *citing Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995). The Fifth Circuit has held that a claim is procedurally defaulted if the state habeas court explicitly found that the claim could have been but was not raised on direct appeal, unless one of the exceptions set forth in *Coleman* has been met. *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006). In *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000), the Fifth Circuit also held that unless cause and prejudice is established for the default, federal courts are precluded from reviewing the merits of a claim that was determined to be procedurally barred at the state habeas level because it was not raised on direct appeal, even where the merits were also reached by the state habeas court.

Here, the state habeas court concluded that the grounds at issue were not cognizable because they were not, and should have been, raised on direct appeal. (S.H.Tr.:163-64). The state habeas court also concluded that petitioner's grounds regarding the lesser-included offense instruction and the reasonable doubt instruction were without merit. (S.H.Tr.:164). Because these grounds for relief were denied at the state level on the basis of an independent and adequate state ground, petitioner

is procedurally barred from raising these grounds for relief unless he can show either cause and prejudice or that the failure to consider the claims on the merits would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Jones*, 171 F.3d at 277.

In his reply brief, petitioner contends that he has shown cause and prejudice because his appellate counsel was ineffective for failing to raise the issues on direct appeal. (Reply at 24). However, a claim of ineffective assistance of appellate counsel alleged as a cause for a procedural default must itself either be exhausted or supported by a showing of cause and prejudice for the failure to exhaust. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Petitioner has not made this showing, and his fifth through ninth grounds for relief are therefore procedurally barred.

## B. Merits

Even if considered on their merits in an "abundance of caution," as in *Soria*, petitioner would not be entitled to relief on these claims. Trial court rulings are matters of state law that are not subject to re-examination by the federal courts. It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). If an erroneous trial court ruling does not violate a specific federal constitutional right, a federal court may only grant habeas relief if the error is not harmless within the meaning of *Brecht v. Abrahamson*, *i.e.*, "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" 507 U.S. 619, 637-38 (citation omitted). The petitioner must show that the error actually prejudiced him. *Id.*. at 637.

Petitioner contends that the trial court erred in admitting hearsay testimony. However, the alleged hearsay testimony was testimony about petitioner's out-of-court statements to various State

witnesses.  (Reply at 26-27).  These statement were admissions, not hearsay, under state law.  *See* TEX. R. EVID. 801(e)(2)(A).  The trial court therefore did not err in admitting them.

Petitioner also asserts that when the trial court sustained objections that defense counsel's questions during cross-examination assumed facts not in evidence, the trial court in effect instructed the jury not to consider certain evidence.  (Pet. at 19-20).  Even assuming the court committed error, petitioner has not shown that sustaining these objections had a substantial effect or influence on the verdict.  The trial court never instructed the jury not to consider certain evidence, and defense counsel emphasized in his closing statement the evidence cited by petitioner.  (R. 4:18, 24-5).  Petitioner has not shown that the jury failed to consider evidence that supported his defense.

As for the lesser-included offense instruction, petitioner notes that the trial record does not reflect the instruction requested by defense counsel.  (Pet. at 19; R. 4:10).  He does not provide the instruction was requested by counsel.  Even if the trial court erred under state law in denying a lesser-included offense instruction, in a non-capital murder case, the failure to give this instruction does not raised a federal constitutional issue. *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988).  Petitioner is therefore not entitled to federal habeas relief on this claim.

Petitioner also asserts that the trial court erred in submitting a reasonable doubt instruction to the jury and that the instruction given was confusing and a violation of his due process rights.  (Pet. at 20-21).  Improper jury instructions in state criminal trials do not generally entitle one to federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).  The Constitution neither prohibits nor requires that reasonable doubt be defined for a jury. *Victor v. Nebraska*, 551 U.S. 1, 5 (1994).  In *Victor*, after noting that a definition of reasonable doubt does not violate the Due Process clause unless there is a reasonable likelihood that the jury understood the instructions to allow conviction based on some lesser standard, the Supreme Court upheld a definition of

reasonable doubt that is similar to the one given in this case. *See* 551 U.S. at 8-13. Petitioner has not shown a reasonable likelihood that the jury understood the definition to allow conviction on a lesser standard, and he is therefore not entitled to relief on the basis of this claim. *See Pryor v. Quarterman*, 2006 WL 3635467 (N.D. Tex. Dec. 13, 2006).

Finally, petitioner asserts that the trial court erred in admitting certain photographs into evidence at the punishment phase of the trial that were unduly prejudicial because they reflected that he was having an affair with a woman from work at the time of his arrest. (Pet. at 18). He acknowledges that the pictures, along with the woman's testimony, were offered in rebuttal to his wife's testimony about his character. The record reflects that the trial court admitted the photographs over defense counsel's objections, stating that it had performed the balancing test concerning the probative weight versus prejudicial effect of the evidence as required under state law. (R. 5:53-4). In federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Petitioner has therefore not shown that he is entitled to relief on this claim. Petitioner's fifth through ninth grounds for relief are without merit and entitle him to no relief.

## VI. RIGHT OF CONFRONTATION

In his eleventh ground for relief, petitioner asserts that his constitutional right to confront and cross-examine a witness was violated when hearsay statements made by Davis were admitted into evidence at trial. (Pet. at 26-27).

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Idaho v. Wright*, 497 U.S. 805, 813 (1990).

Here, most of the alleged hearsay testimony did not consist of out-of-court statements offered for the truth of the matter asserted. *See* TEX. R. EVID. 801(d). Detective Westphalen testified about Davis' agreement to assist the police, the amount of money the police retrieved from Davis' home, and his belief that Davis was involved in the case. (R. 3:213, 215-16, 225).

Westphalen did testify that Jones was arrested when Davis, at the request of the authorities, asked Jones to bring him some money, and that Davis admitted to Westphalen that he had taken some of the money in his home and spent it. (R. 3:213, 215-16). Any trial error from the admission of this testimony is subject to a harmless error analysis. *Cupit v. Whitley*, 28 F.3d 532, 538 (5th Cir. 1994) (holding that, for the admission of hearsay evidence to violate the Confrontation Clause, the improperly admitted evidence must have been not only inadmissible but also material, *i.e.*, "a crucial, critical, or highly significant factor in the framework of the entire trial"). Petitioner has not shown how he was harmed by these statements or that the statements were material. These statements tended to incriminate Jones, who testified about his involvement in the crime, and Davis, who police acknowledged kept the money at his home. They do not concern petitioner's involvement in the crime. The state court ruled that this ground was without merit. (S.H.Tr.:cover, 164). This decision is not contrary to federal law, and relief should be denied on this ground.

## VII. EXCULPATORY EVIDENCE

In his twelfth ground, petitioner claims that the State withheld exculpatory evidence by failing to call Davis as a witness at trial. Petitioner further asserts that Davis could have proven that he, Jones, and others committed the crime, and petitioner was not involved at all.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. "*Brady* claims involve 'the discovery, after trial of information which

16

had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring).

At the state habeas level, the prosecutor submitted an affidavit stating that after reviewing the record and his file, he was unaware of any information that would have been exculpatory with respect to either petitioner or Davis as a witness. In addition, he recalled that he and the defense attorney reviewed the prosecution file, and the defense was aware of everything that the State had in the case. He at no time ever withhold exculpatory evidence in petitioner's case. (S.H.Tr.:172). The trial court found the prosecutor to be trustworthy and the statements made by him in his affidavit worthy of belief and true and correct. The trial court further found that based on the affidavit and the record of the case, the prosecutor did not withhold any exculpatory evidence. (S.H.Tr.:163). The state habeas court denied this claim on its merits. (S.H.Tr.:cover). This denial is not an unreasonable application of federal law.

Petitioner claims that Davis could have testified about where the money was hidden and the location of the money that was never recovered. He also points out that Jones testified that he never gave petitioner any of the money after the crime. Petitioner therefore contends that Davis' testimony was exculpatory. He has not shown that the defense was unaware of Davis' potential testimony. He has not shown that Davis' hypothetical testimony was in fact exculpatory. He has presented no affidavit from Davis about what his testimony would have been if called as a witness, but even if Davis had testified about where the money was hidden and what happened to the rest, this testimony would not exculpate petitioner. The State presented testimony that petitioner committed theft by assisting Jones in removing over $200,000 from Armored Transport's vault. The location of the money after the theft has no bearing on petitioner's guilt. Any conclusory supposition that Davis would have completely exonerated petitioner as a participant in the crime is insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). This ground should be denied.

## VIII.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his thirteenth ground, petitioner claims that his trial counsel was ineffective because he 1) erroneously advised petitioner not to testify; 2) failed to call certain witnesses; 3) failed to object to hearsay; 4) failed to present exculpatory or rebuttal evidence; and 5) failed to challenge the admission into evidence of petitioner's and the accomplice's written statements. (Pet. at 28- 39).

To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

## A. <u>Right to Testify</u>

Petitioner first asserts that his attorney gave him erroneous advise not to testify. At the state habeas level, petitioner's trial attorney submitted an affidavit stating that he did not advise petitioner not to testify and did not influence petitioner's decision not to testify, and petitioner rejected the opportunity to testify at trial. (S.H.Tr.:169). The state habeas court found defense counsel to be trustworthy and the statements in his affidavit to be worthy of belief and true and correct. The state

habeas court denied relief on its merits (S.H.Tr.162-63). This decision is not an unreasonable application of the *Strickland* standard.

The record reflects that after the State concluded its case, the trial court advised petitioner that he had the right to testify and that no one could prevent him from testifying, but that he would be subject to cross-examination if he testified. The court also advised him that he had the right to remain silent and that no one could make him testify. Petitioner initially stated that he would testify, but after he consulted with his attorney, the trial court specifically asked petitioner whether he wanted to testify. Petitioner stated that it was his decision not to testify and that he did not want to testify because the State had read his statement into evidence that day before. (R. 4:4-8).

The record supports the state court's decision on this ground. Petitioner has not overcome the presumption that his attorney acted competently with regard to petitioner's decision whether or not to testify. This claim is therefore without merit.

### B. <u>Failure to Call Witnesses</u>

Petitioner next contends that counsel was ineffective for failing to call three witnesses at trial who could have given exonerating testimony. In his affidavit, defense counsel states that all potential witness were either contacted or an attempt was made to contact them, and that they chose not to call any of them to testify for various reasons. (S.H.Tr.:169). The state habeas court determined that this claim was without merit (S.H.Tr.:cover, 162-63), and this determination is not an unreasonable application of federal law.

If counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *cert. denied*, 540 U.S. 11865 (2004), *quoting*

*United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Defense counsel's affidavit explains that there was a decision made not to call witnesses, and petitioner has not shown that this decision permeated the trial with obvious unfairness. Moreover, in order to establish that counsel was ineffective for failing to call witnesses, petitioner must show that the testimony would have been favorable and that the witnesses would have, in fact, testified. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Petitioner contends that his attorney should have called an employee of Armored Transport to testify that petitioner was never given the duress alarm code, petitioner's cousin to testify about what he and petitioner did that Saturday evening after petitioner got off from work, and Davis to testify that petitioner was not involved in the crime. Petitioner has presented no evidence that these witnesses would have testified in this manner, and none of the hypothetical testimony creates a reasonable probability that petitioner would not have been convicted. The State presented substantial evidence of petitioner's involvement in the crime, including the security tape from Armored Transport, the testimony of Jones, and petitioner's incredible explanations for what occurred. This claim is therefore without merit.

## C.  Failure to Object to Hearsay

Petitioner states generally that his attorney failed to object to all hearsay testimony at trial and that there were hundreds of hearsay statements admitted at trial. In his affidavit, defense counsel states that all necessary objections were made. (S.H.Tr.:169). This claim was denied on its merits, and this denial is not an unreasonable application of the *Strickland* standard.

Because petitioner does not specify what hearsay statements were admitted at trial, this claim is a conclusory one that entitles him to no relief. To the extent that petitioner refers to hearsay statements concerning Davis, those statements have been addressed and found to be harmless. To

the extent that petitioner is complaining about State's witnesses testimony about his statements, those are admissions by a party opponent and therefore not objectionable hearsay. TEX. R. EVID. 801(e)(2)(A). Counsel was therefore not ineffective for failing to object to this testimony. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (stating that the failure to make meritless objections or motions does not constitute deficient performance). This claim is without merit.

## D. Failure to Present Exculpatory or Rebuttal Evidence

Petitioner next asserts that his attorney was ineffective for failing to introduce: 1) time lock logs from Armored Transport showing that it was not uncommon to leave the vaults unlocked; 2) transcripts of telephone calls between Davis and Jones in which petitioner was never mentioned; 3) evidence of plea bargains with Jones, Davis, and others; 4) the jammed gun from petitioner's car; 5) fingerprint evidence from petitioner's driver's license and identification card; and 6) a bottle of brandy from petitioner's car from which he had been drinking. The state habeas court denied relief on this claim, and this denial is not an unreasonable application of the *Strickland* standard.

First, petitioner has not shown that there were any plea bargains made with others involved in the crime. Jones testified specifically that he was offered no plea bargain or the promise of a plea bargain prior to trial. (R. 3:107-08), and petitioner has presented no evidence to the contrary. He has also presented no evidence of the existence of a jammed gun, fingerprints on cards, or a bottle of brandy. Counsel was not ineffective for failing to present purely speculative evidence. Furthermore, neither transcripts of conversations between Jones and Davis that do not mention petitioner nor logs indicating that time locks were not always engaged exculpates him, especially given all of the evidence implicating him in the theft. Because the evidence that petitioner points to is either speculative or does not exculpate him, counsel was not ineffective for failing to present it. This claim is therefore without merit.

### E. Admission of Statements

Finally, petitioner claims that his attorney was ineffective for failing to object to the admission of statements he and Jones gave to the police. Counsel did file motions to suppress both of these statements, and the motions were denied by the trial court. (Tr.:65-69). Counsel was not ineffective in this regard. Petitioner's claims that trial counsel was ineffective are without merit and should be denied.

## IX. ACTUAL INNOCENCE

Finally, in his tenth ground for relief, petitioner claims that he is actually innocent of theft because he is incarcerated for a crime committed by others.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been held to be a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding. The Court then assumed for the sake of argument that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain such a claim. The threshold showing for such an "assumed right" would be "extraordinarily high", however. *Id.* at 417. The Court then concluded that conflicting affidavits submitted eight years after a trial, when considered in light of the strong evidence presented at trial supporting guilt, did not meet this threshold. *Id.* at 417-18. Since *Herrera* was handed down by the Supreme Court, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). Accordingly, under both Supreme

Court and Fifth Circuit case law, petitioner is not entitled to federal habeas relief based on a claim of actual innocence.

Moreover, Texas does have an avenue in which to pursue actual innocence claims. In *State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief where a petitioner established as a threshold that newly discovered evidence, if true, created a doubt sufficient to undermine confidence in the verdict. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Indeed, the state habeas court denied petitioner's actual innocence claim on its merits. (S.H.Tr.:164, cover).

Even if federal habeas relief were available on the basis of a stand-alone actual innocence claim, petitioner would not be entitled to relief. Petitioner's evidence of his actual innocence consists of evidence that others were guilty of the theft and arguments against the validity and weight of the evidence presented by the State at trial. The State, however, never argued that petitioner acted alone in committing theft. As noted, an accomplice testified at trial, and evidence was presented that a third man held the cash at his home. Evidence that others are guilty of theft is not evidence that petitioner is innocent. Furthermore, defense counsel cross-examined the State's witnesses regarding the evidence presented in support of petitioner's conviction. (R. 3:32-45, 124-41, 224-37). Petitioner has provided no evidence of actual innocence, and he is not entitled to relief on the basis of this claim.

## X. EVIDENTIARY HEARING

Upon review of the filings in this case and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## XI. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 25th day of February, 2011.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE